1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

|  |  |
|---|---|
| CARRINGTON STONEMASONS, INC., | Case No.  24-cv-00080-BLF |
| Plaintiff, | |
| v. | **ORDER VACATING HEARING ON MOTION TO REMAND; AND DENYING MOTION** |
| FORD MOTOR COMPANY, | [Re:  ECF 13] |
| Defendant. | |

Plaintiff Carrington Stonemasons, Inc. ("Carrington") filed this lemon law suit against Defendant Ford Motor Company ("Ford") in the Santa Cruz County Superior Court, asserting state law warranty claims arising from the purchase of an allegedly defective vehicle.  *See* Not. of Removal Ex. A (Compl.), ECF 1-2.  Ford removed the suit to federal district court based on diversity jurisdiction.  *See* Not. of Removal ¶ 38, ECF 1.

Carrington moves to remand the suit to state court, arguing that Ford cannot establish the existence of diversity jurisdiction and that even if it could, this Court should decline to exercise jurisdiction over Carrington's state law claims under principles of comity.  *See* Pl.'s Mot., ECF 13. In opposition, Ford argues that the motion to remand should be denied because it has satisfied its burden to establish the existence of diversity jurisdiction.  *See* Def.'s Opp., ECF 14.  Carrington has not filed a reply.

The Court finds the motion to be suitable for decision without oral argument.  *See* Civ. L.R. 7-1(b).  The hearing previously set for June 27, 2024 is VACATED.

The motion to remand is DENIED for the reasons discussed below.

United States District Court
Northern District of California

## I.     BACKGROUND

Carrington filed this action in the Santa Cruz County Superior Court on November 8, 2023, naming Ford as the only defendant[1] and alleging that Ford failed to meet its warranty and repair obligations with respect to a 2019 Ford F-150 vehicle purchased on December 13, 2019. *See* Compl. ¶¶ 5-13.  The complaint asserts two claims for violation of California's lemon law, the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1790, *et seq*. Carrington seeks damages in the amount actually paid or payable under the contract, other unspecified damages, a civil penalty of up to twice actual damages, reasonable attorneys' fees and costs, and other appropriate relief.  *See* Compl. ¶¶ 22-24, 33-35, Prayer.  The complaint does not allege the purchase price of the vehicle or the amount of attorneys' fees and costs incurred.  *See generally* Compl.  Thus, it is not apparent from the face of the complaint whether the amount in controversy exceeds $75,000.  Carrington served Ford with the complaint on November 13, 2023, and Ford answered on December 13, 2023.  *See* Clayton Decl. ISO Removal ¶¶ 5, 30. ECF 1-1.

On December 15, 2023, counsel for Ford obtained a copy of the Retail Installment Sales Contract ("RISC") for the vehicle, and thereby learned that the purchase price was $67,111.46. *See* Clayton Decl. ISO Opp. ¶¶ 5, 11 & Ex. B (RISC), ECF 14-1. Ford asserts that the RISC disclosed sufficient information to determine that the amount in controversy exceeds $75,000, taking into consideration the complaint's request for damages in the amount actually paid or payable under the contract, plus a civil penalty of up to twice actual damages, as well as reasonable attorneys' fees and costs.  *See* Not. of Removal ¶ 25.  Ford removed the action to federal court on January 4, 2024, alleging that the amount in controversy exceeds $75,000 and that there is complete diversity of citizenship between the parties because Carrington is a citizen of California (Carrington's place of incorporation and principal place of business) while Ford is a citizen of both Delaware (Ford's place of incorporation) and Michigan (Ford's principal place of business).  *See id.* ¶¶ 25, 34-37.  Carrington filed its motion to remand on February 6, 2024.

---

[1] The Court observes that Carrington submitted a declaration of counsel and a proposed order erroneously identifying "Big Valley Ford, Inc." as an additional defendant.  *See* Barry Decl. ISO Mot. to Remand, ECF 13-1; Prop. Order, ECF 13-2.  Big Valley Ford, Inc. is not named in the complaint.

United States District Court
Northern District of California

## II.      LEGAL STANDARD

A defendant may remove a civil action from state court to federal district court if the district court would have had original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a).  District courts have original jurisdiction over civil actions based on the presence of a federal question, *see* 28 U.S.C. § 1331, or diversity of citizenship, *see* 28 U.S.C. § 1332.  Thus, "[a] defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction."  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

A party who contests removal may file a motion to remand.  *See* 28 U.S.C. § 1447(c).  "Removal statutes are strictly construed, and any doubt about the right of removal requires resolution in favor of remand."  *Casola v. Dexcom, Inc.*, --- F.4th ----, No. 23-55403, 2024 WL 1547021, at *5 (9th Cir. Apr. 10, 2024) (quotation marks and citation omitted).  "The presumption against removal means that the defendant always has the burden of establishing that removal is proper."  *Id*. (quotation marks and citation omitted).

## III.     DISCUSSION

Carrington contends that remand is warranted on three grounds:  (1) the amount in controversy is speculative; (2) comity principles weigh in favor of remand; and (3) Ford has failed to show complete diversity of citizenship between the parties.  In opposition, Ford argues that it has met its burden to show that the amount in controversy exceeds $75,000 and that there is complete diversity of citizenship between the parties.  Ford does not address Carrington's argument based on comity.  The Court addresses each asserted ground for remand as follows.

### A.      Amount in Controversy

A district court may exercise diversity jurisdiction over a civil action only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[.]"  28 U.S.C. § 1332(a).  "Where, as here, it is unclear from the face of the complaint whether the amount in controversy exceeds $75,000, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold."  *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) (quotation marks and citation omitted).  "The amount in controversy may include damages (compensatory,

1    punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees

2    awarded under fee shifting statutes." *Id*. (quotation marks and citation omitted).  "In assessing the

3    amount in controversy, we may consider allegations in the complaint and in the notice of removal,

4    as well as summary-judgment-type evidence relevant to the amount in controversy." *Id*.

5         Carrington seeks damages in the amount actually paid or payable under the RISC, a civil

6    penalty of up to twice actual damages, and reasonable attorneys' fees and costs.  *See* Compl. ¶¶

7    22-24, 33-35, Prayer.  Carrington has not pled specific amounts for any of these components of the

8    recovery it seeks, and it asserts that the amounts are too speculative for Ford to establish that the

9    amount in controversy exceeds $75,000.  Ford contends that the amount in controversy clearly

10   exceeds $75,000 when Carrington's requests for actual damages, civil penalty, and attorneys' fees

11   are considered on this record.

                          1.    **Actual Damages**

13        Carrington seeks damages in the amount actually paid or payable under the RISC.  *See*

14   Compl. ¶ 22.  Under the Song-Berly Act, a plaintiff may recover "an amount equal to the actual

15   price paid or payable by the buyer," offset by any decrease in the car's value "directly attributable

16   to use by the buyer prior to the time the buyer first delivered the vehicle . . . for correction of the

17   problem that gave rise to the nonconformity."  Cal. Civ. Code § 1793.2(d)(2)(B)-(C).  The

18   decrease in value is based on the number of miles the buyer drove the vehicle prior to the first

19   attempted repair.  *See id*. § 1793.2(d)(2)(C).  District courts within the Ninth Circuit disagree

20   whether this decrease in value, generally referred to as the "use offset" or the "mileage offset,"

21   should be considered when determining the amount in controversy for purposes of diversity

22   jurisdiction.  *See Cabrera v. FCA US LLC*, No. 1:22-cv-00431-NODJ-BAM, 2023 WL 8477970,

23   at *2 (E.D. Cal. Dec. 7, 2023) (comparing cases).

24        Ford cites *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102,

25   1108 (9th Cir. 2010), for the proposition that the amount in controversy should be determined

26   solely by what a plaintiff demands in the complaint, without consideration of any defense such as

27   offset.  In *Geographic Expeditions*, the Ninth Circuit held that the district court erred in

28   considering a potential contractual damages cap when determining the amount in controversy for

United States District Court
Northern District of California

4

1    jurisdictional purposes, stating "if a district court had to evaluate every possible defense that could

2    reduce recovery below the jurisdictional amount the district court would essentially have to decide

3    the merits of the case before it could determine if it had subject matter jurisdiction." *Id.*

4           Eight years later, however, the Ninth Circuit held that a district court properly considered

5    the use offset when determining the amount in controversy in a lemon law case removed under the

6    Class Action Fairness Act ("CAFA").  *See Schneider v. Ford Motor Co.*, 756 F. App'x 699, 701

7    n.3 (9th Cir. 2018).  The *Schneider* court stated that "an estimate of the amount in controversy

8    must be based on the applicable measure of damages, not on what a plaintiff requests in a

9    complaint."  *Id.* (quotation marks and citation omitted).  Thus, the Ninth Circuit held in *Schneider*

10   that "[c]onsideration of the Use Offset was appropriate" to determine the existence of CAFA

11   jurisdiction, because "the Use Offset measure[d] the value of the F-150s that the putative class

12   members purchased."  *Id*.

13          This Court need not resolve the issue of whether the use offset should be applied when

14   determining the amount in controversy, because the evidence of actual damages submitted with

15   Ford's opposition brief accounts for the use offset.  Ford presents evidence that the vehicle

16   purchase price was $67,111.46.  *See* Clayton Decl. ISO Opp. ¶ 11.  Carrington first presented the

17   vehicle for repair on October 10, 2020.  *See id*. ¶ 15.  At that time, the vehicle mileage was 23,067.

18   *See id.* & Ex. E.  Ford calculates the use offset to be $12,855.76.  *See id.* ¶ 17.  Subtracting the use

19   offset from the vehicle purchase price results in actual damages of $54,255.70 ($67,111.46 -

20   $12,855.76 = $54,255.70).  *See id.*  Because Carrington has not filed a reply, Ford's calculation of

21   the use offset and actual damages is undisputed.  Accordingly, the Court accepts Ford's assertion

22   of actual damages in the amount of $54,255.70 for purpose of the present motion.

23                        **2.      Civil Penalty**

24          In addition to actual damages, Carrington seeks a civil penalty of up to twice actual

25   damages.  *See* Compl., Prayer.  Under the Song-Berverly Act, "[i]f the buyer establishes that the

26   failure to comply was willful, the judgment may include . . . a civil penalty which shall not exceed

27   two times the amount of actual damages."  Cal. Civ. Code § 1794(c).  Using the above calculation

28   of actual damages in the amount of $54,255.70, then, Carrington seeks a civil penalty of up to

$108,511.40 ($54,255.70 x 2).  Adding this requested penalty to the requested actual damages, Carrington seeks a total of $162,767.10, well in excess of the jurisdictional threshold of $75,000.

Carrington contends that Ford must show not only that Carrington seeks monetary relief in excess of $75,000, but that Carrington is *likely to recover* in excess of $75,000.  That argument is foreclosed by the Ninth Circuit's holding that "[t]he amount in controversy is not a prospective assessment of [a] defendant's liability."  *Chavez*, 888 F.3d at 417 (quotation marks and citation omitted, alteration in original).  For purposes of satisfying the amount in controversy requirement, the relevant amount is not what Carrington is likely to recover, but "[r]ather, it is the amount at stake in the underlying litigation."  *Id*. (quotation marks and citation omitted).

In its motion, Carrington suggests that another Ninth Circuit decision, *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996), supports its position that a removing defendant must show it is "more likely than not" that the plaintiff will recover more than the jurisdictional minimum.  Carrington quotes the "more likely than not" language out of context.  In *Sanchez*, the Ninth Circuit held that a defendant who removes a case to federal court must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum.  *Sanchez*, 102 F.3d at 404.  The *Sanchez* court explained that "[u]nder this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount."  *Id*.  The "more likely than not" language relates to the defendant's burden to establish that the *amount at stake* – not the ultimate recovery – exceeds the jurisdictional threshold.  Thus, Carrington's reliance on *Sanchez* is misplaced.

Carrington cites district court cases holding that a plaintiff's request for a civil penalty may not be included in the amount in controversy unless the defendant makes a "showing that such a civil penalty is more likely than not to be awarded."  *Castillo v. FCA USA, LLC*, No. 19-CV-151-CAB-MDD, 2019 WL 6607006, at *2 (S.D. Cal. Dec. 5, 2019); *see also Herko v. FCA US, LLC*, No. 19-CV-2057 JLS (WVG), 2019 WL 5587140, at *2 (S.D. Cal. Oct. 30, 2019) (same).  This Court declines to follow those cases, as they are directly contrary to the Ninth Circuit's articulation of the defendant's burden in *Chavez* and *Sanchez*.  Applying the controlling Ninth Circuit precedent, this Court considers Carrington's request in the complaint for actual damages

United States District Court
Northern District of California

1   plus a civil penalty of up to twice actual damages.  This approach is consistent with that of

2   numerous district courts within the Ninth Circuit.  *See, e.g., Van Horn v. Gen. Motors, LLC*, No.

3   23-CV-04320-PCP, 2024 WL 1335195, at *1 (N.D. Cal. Mar. 27, 2024) (finding jurisdictional

4   threshold met based on consideration of vehicle purchase price and plaintiff's request for a civil

5   penalty under the Song-Beverly Act in an amount equal to twice her damages); *Solis v. Nissan N.*

6   *Am. Inc.*, No. CV 24-00728-MWF (EX), 2024 WL 1311275, at *4 (C.D. Cal. Mar. 27, 2024)

7   ("Several courts have found that the maximum recoverable civil penalty – two times Plaintiff's

8   actual damages – should be considered for purposes of determining the amount in controversy."); 

9   *Cabrera*, 2023 WL 8477970, at *2 ("[T]he court will include the requested civil penalties in the

10   amount in controversy.").

11       Accordingly, the Court finds that Ford has demonstrated that the amount in controversy is

12   at least $162,767.10, representing Carrington's request for actual damages plus a civil penalty of

13   twice actual damages, well in excess of the jurisdictional minimum.

14                    **3.    Attorneys' Fees**

15       Carrington requests reasonable attorneys' fees in an unspecified amount.  *See* Compl.,

16   Prayer.  A buyer who prevails on an action under the Song-Beverly Act may recover attorneys'

17   fees "reasonably incurred by the buyer in connection with the commencement and prosecution of

18   such action."  Cal. Civ. Code § 1794(d).  "[A] court must include future attorneys' fees

19   recoverable by statute or contract when assessing whether the amount-in-controversy requirement

20   is met."  *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018)

21       With its opposition, Ford presents evidence that attorneys' fees incurred in Song-Beverly

22   Act actions such as the present case usually total at least $35,000 and commonly exceed $100,000. 

23   *See* Hugret Decl. ISO Opp. ¶¶ 4-6, ECF 14-2.  Carrington has not filed a reply and thus Ford's

24   showing on attorneys' fees is undisputed.  Including attorneys' fees of $35,000, the Court finds

25   that the amount in controversy is $197,767.10.

26                    **4.    Conclusion re Amount in Controversy**

27       Based on the foregoing, the Court finds that Ford has demonstrated that the amount in

28   controversy exceeds the jurisdictional minimum of $75,000.

United States District Court
Northern District of California

**B.     Comity**

Carrington argues that even if there is diversity jurisdiction, this Court should decline to exercise jurisdiction under principles of comity.  In essence, Carrington argues that state court is the more appropriate forum for its state law claims.  Ford does not address the comity argument in its opposition.

Carrington ignores the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  "[C]ourts at every level of the federal judiciary have rejected the precise premise on which Plaintiffs' 'comity' argument is based: that a court has authority to decline to exercise diversity jurisdiction."  *Bratton v. FCA US LLC*, No. 17-CV-01458-JSW, 2017 WL 11687946, at *8 (N.D. Cal. June 22, 2017) (collecting cases).  Following those cases, this Court finds Carrington's comity argument to be without merit.

**C.     Diversity of the Parties**

A district court may exercise diversity jurisdiction over a civil action only where there is complete diversity of citizenship between the plaintiff and the defendant.  *See* 28 U.S.C. § 1332(a).  As relevant here, that means that Carrington and Ford must be "citizens of different States."  *Id.* § 1332(a)(1).  Carrington argues that Ford has not adequately established diversity of citizenship.

Both Carrington and Ford are corporations.  A corporation is a citizen of both its state of incorporation and the state in which it has its principal place of business.  *See* 28 U.S.C. § 1332(c)(1).  Ford points out that the complaint itself alleges that Carrington is "a California corporation in good standing."  Compl. at 2:1-2.  In addition, Ford submits Carrington's Statement of Information filed with the California Secretary of State, indicating that its principle place of business is in California.  *See* Clayton Decl. ISO Opp. ¶ 7 & Ex. C.  Ford also submits its own 10-K filing for the fiscal year ending December 31, 2022, showing that it is a corporation organized under the laws of the State of Delaware with its principle place of business in Michigan. *See id.* ¶ 8 & Ex. D.  Carrington has not filed a reply and therefore Ford's evidence regarding citizenship of the parties is undisputed.

The Court finds that Ford has met its burden to establish that it and Carrington are citizens of different states.

**D.      Conclusion Re Diversity Jurisdiction**

Ford has submitted evidence with its opposition brief establishing that the amount in controversy exceeds $75,000 and that there is complete diversity of citizenship between the parties.  Because Carrington has not filed a reply, Ford's evidence is unrefuted.  Based on Ford's showing, the Court finds that Ford has established the existence of diversity jurisdiction in this case.

Accordingly, Carrington's motion to remand is DENIED.

**IV.   ORDER**

(1)      Carrington's motion to remand is DENIED.

(2)      This order terminates ECF 13.

Dated:  April 22, 2024

BETH LABSON FREEMAN
United States District Judge